May 2, 2024

Fuller Mill Realty, LLC                    :

v.                                         :

Rhode Island Department of                 :
Revenue Division of Taxation.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Fuller Mill Realty, LLC           :

v.                     :

Rhode Island Department of    :
Revenue Division of Taxation.

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  This case is before this Court pursuant to the grant of a petition for certiorari which was filed on May 2, 2022 by the defendant, the Rhode Island Department of Revenue Division of Taxation (the Division).  The Division sought review of the April 11, 2022 order of the District Court denying the Division's motion to dismiss the January 11, 2022 appeal filed by the plaintiff, Fuller Mill Realty, LLC (Fuller Mill).  The Division contended that the hearing judge erred in denying its motion because, in its view, he (1) ignored the terms of the settlement agreement and (2) "wrongfully found that [Fuller Mill] was entitled to an administrative hearing" before the Division.  This Court granted the petition for certiorari on May 2, 2023.

The parties were directed to appear before the Supreme Court and show cause

why the issues raised by the parties should not be summarily decided. After considering the parties' written and oral submissions, and after carefully reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we quash the order of the District Court and remand for entry of an order dismissing the case.

## I

### Facts and Travel

This case involves the Rhode Island Historic Preservation Tax Credits Program, which program is administered by the Division. Under the program, applicants which "incur qualified rehabilitation expenditures for the substantial rehabilitation of certified historic structures" and which satisfy certain requirements receive a tax credit for state income tax purposes. *See* G.L. 1956 § 44-33.6-4. Fuller Mill, an applicant which satisfied the initial criteria, entered into an historic tax credit agreement with the Division on June 9, 2016 (the original agreement) relative to a project known as the George H. Fuller Building Project.

On July 10, 2018, the Division notified Fuller Mill that, because quarterly reports "indicated that the project had remained idle for more than six (6) months," Fuller Mill had "forfeited its rights, claims, and entitlement to any historic tax credits for its project." Fuller Mill protested the forfeiture, and administrative proceedings

commenced.  Fuller Mill provided the Division with "supplemental documentation indicating that the project did not remain idle," and both parties then entered into a "Stipulation of Settlement and Dismissal" on August 6, 2019, which reinstated Fuller Mill's historic tax credits.

Fuller Mill continued work on the project, but it "was further delayed due to the impacts of the global COVID-19 pandemic."  On November 18, 2020, the Division notified Fuller Mill that its "tax credits were being rescinded" because it had failed to complete the project by the May 2018 completion date required by the original agreement.  Fuller Mill protested and requested an administrative hearing in order to challenge the rescission.

In April 2021, the parties entered into another "Stipulation of Settlement and Dismissal" (the April 2021 stipulation), which extended to November 9, 2021 the date by which Fuller Mill would be required to complete substantial construction. The April 2021 stipulation further stated that Fuller Mill's failure to meet the deadline would "result in the forfeiture of all rights, claims and entitlements to the tax credits"—and, significantly, it also specifically stated that "[s]uch forfeiture will not be subject to appeal."  Also included in the April 2021 stipulation was a provision entitled "Waiver of Hearing," which reads as follows:

"By agreeing to resolve this matter through the execution of this Stipulation, the Applicant knowingly and voluntarily waives any right to an administrative hearing on the underlying merits of the administrative action and waives any right to pursue an appeal to the District Court * * *."

On December 1, 2021, the Division informed Fuller Mill by letter that, as a result of its failure to abide by the terms of the April 2021 stipulation by the November 9, 2021 deadline, Fuller Mill "no longer has tax credits available * * *." On December 7, 2021, Fuller Mill requested a hearing before the tax administrator to establish that it should be excused from timely performance due to *force majeure*.[1] It contended that, although it had "waived its right to appeal whether or not it ha[d] spent [the required amount] by November 9, 2021, it ha[d] not waived its right to a hearing to determine if the Division of Taxation was correct to revoke the * * * tax credits." The Division denied the request for a hearing on December 22, 2021.

On January 11, 2022, Fuller Mill filed an appeal in the District Court, contending that it had not requested a hearing for the purpose of appealing the Division's decision that Fuller Mill had not met the terms of the April 2021 stipulation, but rather "to determine whether the performance * * * was excused by

---

[1]     *Force majeure* has been defined as "[a]n event or effect that can be neither anticipated nor controlled; esp., an unexpected event that prevents someone from doing or completing something that he or she had agreed or officially planned to do." Black's Law Dictionary 788 (11th ed. 2019).

force majeure." Fuller Mill further asserted that the "Division does not have the discretion to deny the request for a hearing pursuant to [G.L. 1956] § 44-1-32."[2]

On February 2, 2022, the Division filed in the District Court a motion to dismiss the appeal pursuant to Rule 12(b)(6) of the District Court Civil Rules. The Division argued that, according to the "clear and unambiguous" terms of the April 2021 stipulation, Fuller Mill had "expressly waived its right to appeal the forfeiture of its tax credits, and waived its right to an administrative hearing and administrative appeal in District Court."

On April 5, 2022, a hearing on the Division's motion to dismiss was held, at the conclusion of which the hearing judge denied said motion. He concluded, somewhat opaquely, that § 44-1-32 did not allow the Division to "ex parte make a decision * * * that the requirements were not fulfilled as to the stipulation and that

---

[2]    General Laws 1956 § 44-1-32 states:

> "Any taxpayer aggrieved by the action of the tax administrator in determining the amount of any tax, any surcharge that is required to be remitted to the tax division pursuant to § 39-21.1-14 or penalty for which a hearing is not provided may apply to the tax administrator, in writing, within thirty (30) days after notice of the assessment is mailed to the taxpayer, for a hearing relative to the tax or penalty. The tax administrator shall, as soon as practicable, fix a time and place for the hearing and shall, after the hearing, determine the correct amount of the tax, interest, and penalty."

- 5 -

there was not potentially a justifiable reason." An order denying the Division's motion to dismiss was entered on April 11, 2022. The Division thereafter filed a petition for writ of certiorari, which this Court granted on May 2, 2023.

## II

## Standard of Review

On the relatively rare occasions when we review by certiorari interlocutory decisions regarding the denial of a Rule 12(b)(6) motion to dismiss, we apply the same standards that we apply when reviewing the grant of such a motion.[3] *Imperial Casualty and Indemnity Company v. Bellini*, 746 A.2d 130, 132 (R.I. 2000) ("Generally, we decline to review on certiorari interlocutory decisions such as the denial of a motion to dismiss * * *. In those limited circumstances in which we issue the writ, we apply on review the same standard as that applied in reviewing the grant of such a motion.") (citation omitted). In conducting our review pursuant to the provisions of Rule 12(b)(6), we apply the same standards applied by the hearing justice. *See Rein v. ESS Group, Inc.*, 184 A.3d 695, 699 (R.I. 2018); *Goddard v. APG Security-RI, LLC*, 134 A.3d 173, 175 (R.I. 2016). In doing so, we limit our review to the complaint, assume that the facts and allegations in the complaint are true, and

---

[3]     Rule 12(b)(6) of the District Court Civil Rules is identical to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure; we may look to cases interpreting one when interpreting the other. *See Apex Oil Company, Inc. v. State*, 297 A.3d 96, 107 n.9 (R.I. 2023).

- 6 -

view them in the light most favorable to the plaintiff. *Pontarelli v. Rhode Island Department of Elementary and Secondary Education*, 176 A.3d 472, 476 (R.I. 2018).  However, the rule that we limit our review to the allegations in the complaint is not absolute.  We have recognized "a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *EDC Investment, LLC v. UTGR, Inc.*, 275 A.3d 537, 542-43 (R.I. 2022) (internal quotation marks omitted).  A motion to dismiss may be granted only "if it appears beyond a reasonable doubt that a plaintiff would not be entitled to relief under any conceivable set of facts." *Pontarelli*, 176 A.3d at 476 (deletion omitted) (quoting *Multi-State Restoration, Inc. v. DWS Properties, LLC*, 61 A.3d 414, 416 (R.I. 2013)).

### III

### The Contentions of the Parties

The Division argues that the terms of the April 2021 stipulation "are valid and binding, and [Fuller Mill's] Complaint is barred as a result."  It emphasizes that "[t]he plain, unambiguous, and unmistakable language of the waivers states that Fuller [Mill] waived its right to an administrative hearing on the merits of the administrative action and any right to appeal to District Court."  The Division further contends that, in holding that Fuller Mill was entitled to an administrative hearing,

the hearing judge ignored the impact of both the April 2021 stipulation and "the relevant statutes and regulations."[4] The Division also contends that the original agreement's *force majeure* exception "was not intended to apply to [Fuller Mill's] forfeiture of the tax credits for its failure to meet the Substantial Construction deadline."[5] It is the Division's position that "[t]he clear intent of the mandatory terms used by the parties demonstrates that the forfeiture for failing to meet the Substantial Construction deadline is final, not subject to excusal by a reason of a *force majeure* and, most importantly, not subject to appeal."

---

[4]  The controlling statute is § 44-1-32. *See* footnote 2, *supra*. The controlling regulation is 280 RICR 20-20-6.18, which reads in pertinent part as follows:

> "Any Person aggrieved by the Division of Taxation's denial of a tax credit or tax benefit under this program shall notify the Division of Taxation in writing, within thirty (30) days from the date of mailing of the notice of denial of the tax credit, and request a hearing relative to the denial of the tax credit. The Division of Taxation shall, as soon as is practicable, set a time and place for hearing, and shall render a final decision."

[5]  The *force majeure* clause in the original agreement reads as follows:

> "To be deemed an event of force majeure, the cause of the event must be (i) reasonably unforeseen, (ii) outside the control of the Applicant and (iii) could not be avoided by the Applicant's exercise of due care. By way of example, and not in limitation, any delays, work stoppages, or work force reductions caused by financial difficulties, labor disputes or violation of the law shall be deemed to cause the Project to Remain Idle."

Fuller Mill contends that the April 2021 stipulation did not contain "a global waiver" of its right to a hearing; it argues that conferring an "unfettered discretion" on the Division to revoke tax credits "was outside of the parties' contemplations * * *." Fuller Mill further contends that the hearing judge "properly held that [the Division] lacked any discretion to refuse [Fuller Mill's] timely request for a hearing * * *." Fuller Mill asserts that "the applicable statutory and regulatory provisions" (*viz.*, § 44-1-32 and 280 RICR 20-20-6.18) are "unambiguous and must be applied literally." Fuller Mill contends that, in light of these provisions, the Division "lacks the authority to deny a request for a hearing" because they "clearly compel the [Division] to provide that hearing and do not afford the [Division] with any discretion to refuse the request." In addition, Fuller Mill states that the April 2021 stipulation "does not contain an express waiver or modification which would have limited the applicability of [the *force majeure* clause] to only the Project Completion date and not to Substantial Completion." Fuller Mill states that "the provisions in the [original agreement] that are consistent with the [April 2021 stipulation] were not modified" and that, therefore, the *force majeure* clause is not inconsistent with the terms of the April 2021 stipulation because it "does not state that [Fuller Mill] is precluded from invoking [the *force majeure* clause] as to Substantial Completion."

## IV

## Analysis

In determining whether contract terms, such as those in the April 2021 stipulation, are ambiguous, "we give words their plain, ordinary, and usual meaning." *Chariho Regional School District, by and through Chariho Regional School Committee v. State*, 207 A.3d 1007, 1015 (R.I. 2019) (quoting *Botelho v. City of Pawtucket School Department*, 130 A.3d 172, 176 (R.I. 2016)). If we do not discern any contractual ambiguity, "our judicial role becomes quite straightforward: the plain language * * * is to be applied." *Papudesu v. Medical Malpractice Joint Underwriting Association of Rhode Island*, 18 A.3d 495, 498 (R.I. 2011). Moreover, "[t]he subjective intent of the parties may not properly be considered by the Court; rather, we consider the intent expressed by the language of the contract." *Derderian v. Essex Insurance Co.*, 44 A.3d 122, 128 (R.I. 2012) (internal quotation marks omitted). When a contract is unambiguous, "we simply consider the dictates of the plain language in the contract." *Papudesu*, 18 A.3d at 498.

We have carefully examined the language in the April 2021 stipulation at issue in this case, which states that Fuller Mill "knowingly and voluntarily waives *any* right to an administrative hearing on the underlying merits of the administrative action and waives *any* right to pursue an appeal to the District Court * * *." (Emphasis added.) We consider the meaning of those words to be unambiguous,

straightforward, and readily understandable. The incontestable fact is that Fuller Mill "knowingly and voluntarily" waived its right to both an administrative hearing and to a District Court appeal with respect to the Division's determination that Fuller Mill's tax credit rights had been forfeited. Although that language clearly waives certain rights of which Fuller Mill otherwise could have availed itself, that is precisely what the April 2021 stipulation provides. *See Papudesu*, 18 A.3d at 498 ("[W]e do not actually *construe* an unambiguous contract; we simply consider the dictates of the plain language in the contract."); *see also F.D. McKendall Lumber Co. v. Kalian*, 425 A.2d 515, 518 (R.I. 1981). In our judgment, the terms of the April 2021 stipulation are clear, and they must be applied as they are written. *See Young v. Warwick Rollermagic Skating Center, Inc.*, 973 A.2d 553, 560 (R.I. 2009) ("When * * * we are confronted with unambiguous contractual words, what is claimed to have been the subjective *intent* of the parties is of no moment."); *Gorman v. Gorman*, 883 A.2d 732, 739 n.11 (R.I. 2005) ("Under established contract law principles, when there is an unambiguous contract and no proof of duress or the like, the terms of the contract are to be applied as written."); *W.P. Associates v. Forcier, Inc.*, 637 A.2d 353, 356 (R.I. 1994). Accordingly, it is our view that the hearing judge erred in denying the Division's motion to dismiss.

# V

## Conclusion

For the reasons set forth in this opinion, we quash the order of the District Court denying the Division's motion to dismiss, and we remand the case to the District Court with directions that it enter an order dismissing the case.



## STATE OF RHODE ISLAND

### SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Fuller Mill Realty, LLC v. Rhode Island Department of Revenue Division of Taxation. |
| **Case Number** | No. 2022-122-M.P.<br>(A.A. 22-4) |
| **Date Opinion Filed** | May 2, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Sixth Division District Court |
| **Judicial Officer from Lower Court** | Associate Justice Christopher Smith |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Marc DeSisto, Esq.<br>For Defendant:<br><br>Nicholas J. Hemond, Esq. |